Good morning. The Court of Appeals always enjoys returning to Pittsburgh on at least one occasion during the year. We hope that at some point in time our caseload is such that we can visit more frequently. As we've done in the past. And we always appreciate the hospitality we receive from the folks here in the courthouse on Grand Street as well as the opportunity to interact with members of the Allegheny County Bar and elsewhere as we will do tomorrow for the Third Circuit Review which is held annually here. So with that said, we'll call the first matter for oral argument this morning. And it is Kushner v. Atty Gen NJ. Mr. Goddard and Mr. Rowe. Very well. We have an Adrian and an Adrienne. Later. Thank you. You may go forward. May it please the Court. My name is Matthew Goddard and I represent the appellant Larry Kushner. At this time I'd like to request two minutes for rebuttal which will be handled by my co-counsel Adrienne Botts. Granted. Thank you, Your Honor. This Court shall reverse the District Court of New Jersey and grant Mr. Kushner's writ of habeas corpus for two reasons. First, the State Trial Court and Appellate Court applied an unrecognized complexity exception to the speedy trial right and the one-year time limit set forth in Doggett v. United States. Well, let me stop you right there. And I know you haven't gotten to point number two yet. But I can't resist asking you how you can suggest without using these words that this complexity that is referred to is somehow created out of whole cloth when the language of Barker v. Wingo specifically uses that term and talks about cases that may be ordinary street crime versus a serious complex conspiracy charge. I mean, can't it be suggested or even convincingly argued that the complexity here referred to by the State Court is derived directly from that opinion? Yes, Your Honor. However, Barker uses that as one factor among many when looking at the reason for the delay in a Sixth Amendment case. However, here what the State Courts did was once it deemed this case to be a complex white-collar case, it completely skirted around the reasons for the delay or the rest of the Barker analysis under that pre-indictment delay. Well, isn't it really we should take a holistic approach under the Barker analysis as opposed to focusing on one individual criteria? And why did Mr. Kushner first assert his speedy trial rights? Mr. Kushner asserted his speedy trial right at the time of his plea bargain, which is a similar time to when the defendant in Doggett v. United States asserted that right. And further, Barker v. Wingo tells us Did he assert it then or just preserve it? He preserved the right at the time of the plea cutoff and then asserted the right by motion right after the plea bargain. And here Barker v. Wingo tells us that the criminal defendant does not have a duty to bring himself to trial. However, the prosecutor and the courts have a duty to ensure that the defendant has a speedy trial. And so here both the prosecution and the court have a responsibility to bring Mr. Kushner to trial within a speedy term, which Doggett said was one year. And so this one-year time period is the presumptive level. Exactly. It is presumptive, but it is not automatic, right? Correct, Your Honor. In fact, the Barker delay was how long?  And the Doggett delay was eight and a half. Yes, Your Honor. However, here those delays in Barker was from arrest until trial. And specifically in Barker, the court looked to motions for continuance that Barker was filing and when he specifically started to oppose those motions. And the court reasoned his trial strategy based on that and said that he knowingly acquiesced to the delay. However, here Mr. Kushner had no chance to come before the court. Mr. Kushner was arrested and did not come before the court again until 15 months later when he was indicted. The correct course of action here is to wait until they have sufficient probable cause to indict to conduct the arrest, at which time they're able to bring forth a speedy indictment, at which time that Mr. Kushner would be able to oppose. The state here did have probable cause and they acted on that probable cause in the several charges they filed, right? Yes, Your Honor. And they acted on that probable cause to arrest first in February of 2007. However, did not act on that probable cause to indict until May of 2008. Could Mr. Kushner have done anything to accelerate the process? Yes, Your Honor. The New Jersey court rule 325-3 allows Mr. Kushner the right by motion to raise the issue or the court sui sponte to raise the issue. You agree then that it is 325-3 but that the New Jersey court incorrectly referred to 325-2? Yes, Your Honor. And 325-2 is very important here because it shows a proper length of a delay in an indictment. If Mr. Kushner had been incarcerated during this time period, 325-2 says that they would have had to bring him to an indictment within 90 days. But he wasn't. So what's the point? Yes, Your Honor. But Barker v. Wingo, and specifically Justice White's concurrence in Barker v. Wingo, really points to the emphasis that it is not just incarcerated individuals that are protected by the speedy trial right. It is also these individuals who are suffering the deprivations of their liberty in the society. Here, Mr. Kushner was suffering not being able to travel, not being able to earn income as he had in the past, fear and anxiety. Why does this get back to him accelerating the process? You admitted that he could have accelerated the process, right? Yes, Your Honor. Why didn't he? He has no duty to bring himself to trial, as I stated. And here, there could be a number of reasons why Mr. Kushner The court didn't say he had such a duty, but we do have, as a Barker factor, assertion of the right. So it's an appropriate inquiry, isn't it? Yes, Your Honor. However, we must look to the reason that the right was not asserted. And in Barker, the assertion problem weighed against Mr. Barker because he had waited to oppose those motions until it was a convenient trial strategy for him. Here, Mr. Kushner had retained counsel and was awaiting trial. And we have no fact-finding about why he did not assert that right within that 15 months. But didn't Mr. Kushner have to disengage as it were counsel because he couldn't afford counsel and then the defenders were appointed to represent him? Yes, Your Honor. Isn't that time attributable to the defendant in this case? Yes, Your Honor. And so the post-indictment delay has some fault on the behalf of Mr. Kushner. However, this pre-indictment delay, Mr. Kushner had no fault in that delay, and thus the reason for the delay weighs heavily against the state in that pre-indictment period. What was the harm? Let's talk about prejudice. You seem to throw mud on the public defender. Is that really appropriate? Is it your argument that his appointed counsel was incompetent? No, Your Honor. What's the harm then? The public defenders in this case worked diligently to defend Mr. Kushner. However, this 15-month pre-indictment delay, the prosecutors were able to build their case and prepare for trial while Mr. Kushner was not able to do these things. Appellee correctly states in their- Why wasn't he able to do those things? What period of time during the delay was Mr. Kushner without counsel? At no period, Your Honor. However, appellee correctly states in their brief that the defense counsel was not able to obtain most of the discovery or go to a lot of meetings and things like that for this case until after the indictment. So essentially what you have was- Well, this was a tax case. Wasn't most of the discovery in the defendant's possession before the government had it? Yes, Your Honor. However, a lot of these charges were added on at the time of the indictment. At the time of the arrest, it was for a credit card fraud as well as the theft by deception. And at the time of the indictment, there were tax charges and things of that nature added on. So what happened here was the state had all this time, this 15 months, to prepare their case in chief. However, then when they indict, they basically push the ball back to Mr. Kushner and the defense counsel, at which time the private counsel had to take time to prepare for this case. And then Mr. Kushner ran out of funding to pay for the private counsel, at which time he gets a public defender. The public defender had to take time to familiarize themselves with the case, at which time another public defender felt that they would be more aptly able to handle this case, at which time they had to take time to familiarize this case. And all of this could have been happening concurrently to the state preparing their case. However, the state chose to wait that 15 months to indict. So you want a rule that says that as soon as the state has evidence of some crime, it must indict for that crime. You'd rather have somebody indicted six or seven times every time the investigation yields evidence of a new crime. Your Honor, we would like a- That's just not the way it works, right? Yes, Your Honor. However, there is a right to be a speedy trial, and specifically in Doggett, it's been stated that at one year, we start to look at the speedy trial right. You seem to have returned to the delay and the reasons for the delay. Judge Hardiman had asked a few minutes ago specifically about prejudice, and I'm not sure I've heard you articulate just what the prejudice was here that was experienced by Mr. Kushner. Yes, Your Honor. The district court correctly stated that, as the state stated that, these harms that Mr. Kushner suffered as far as anxiety and fear are similar harms to all criminal defendants. However, that's the specific reason that we have the speedy trial right. And in fact, Barker characterized those essentially as minimal prejudice, didn't he? No, Your Honor. And in Barker, the court stated that the minimization of anxiety and concern of the accused is an important part of the prejudice prong, and the second of the three factors that it looks at when examining prejudice. And here you had a defendant who was accused in the society. His name was in the newspaper. He was suffering all of this prejudice. How is that different from the prejudice in every criminal case? The difference is that he suffered this for 15 months without being able to go to the court and have any say in the procedural posture of this case. And the question becomes, appellee has given no answer to how long this could have gone on. Could the state have waited two years to indict Mr. Kushner? Could they have waited three years to indict Mr. Kushner? Currently, there is no standard under New Jersey law that states that. What standard do you want us to establish? The standard set forth in Dog of the United States that says that one year, the court must look at this issue. You want us to change that from a presumption to a hard and fast rule of violation? No, Your Honor. Simply a inquiry into. Aren't we conducting that inquiry right now? Isn't that exactly what the district court did as well? Yes, Your Honor. However, the state trial and appellate court did not conduct this inquiry into the pre-indictment delay and simply stated that for a complex case such as this, this is not an uncommonly long period of time. However, federal court often deals with complex cases. What's our standard of review? Let's assume for a minute you're right that the state court didn't engage in the proper evaluation. What's our standard of review? Under the habeas corpus statute, Your Honor, if the holding of the state court is contrary to or an unreasonable application of clearly established federal law, then the habeas writ should be granted. And here, the state court's analysis was contrary to that analysis in Doggett, where it said at one year, you look at the full Barker inquiry. However, at 15 months, the state trial court stated that this was not an uncommon delay for a complex case such as this. And the Speedy Trial Act in federal court requires all cases be brought to indictment within 30 days after arrest. Can you point to a case within the Third Circuit where we have found there to have been unreasonable delay, where that delay was 15 months? No, Your Honor. However, most of the delays cited by appellee are from arrest until trial. So cases such as United States v. Taylor and Hakeem v. Byer, that is from arrest all the way until trial. Those 14-and-a-half-month delays and the like. Let me follow up the Judge Smith's question. Chief Judge Smith, excuse me. Can you cite a case from any circuit or any state supreme court that supports your position? No, Your Honor, because this is a unique circumstance where they waited this long to simply indict the defendant. And it is unique because it is contrary to that established standard in Doggett v. United States. Thank you. Thank you very much. Mr. Brader? Yes, sir. Good morning, and may it please the Court. My name is Ian David Brader. I'm an assistant prosecutor in Monmouth County, New Jersey, and I represent the appellee in this case, the Attorney General of the State of New Jersey. This Court should affirm the judgment below because the district court correctly concluded that the New Jersey State Court's rejection of Mr. Kushner's constitutional speedy trial plan amounted to a reasonable application of Barker's four-factor balancing test. And if we look at those four factors, we see the length of the delay, number one. The delay in this case was 15 months, the delay complained of, 15 months from arrest to indictment. Now, that delay, as appellant correctly asserts, is beyond the 12-month standard that most courts adhere to for judicial scrutiny of a speedy trial plan. Mr. Goddard has pointed out, though, that when we look at speedy trial cases, we are virtually always looking at delay from the time of the filing of charges or arrest to the time of trial. That is a distinction that we have here in the 15-month delay that Kushner is complaining of, right? Yes, Your Honor, it is a distinction to an extent. In a lot of cases where the court is looking from the delay from the arrest to the indictment, when the court moves to the second prong of the Barker analysis, which is the reason for the delay, the court subtracts any delay that was caused by a defendant from the overall delay that would be analyzed under the remaining Barker factors. And in some cases, you'll see where post-indictment delay is attributable solely to a defendant or mostly to a defendant where the court narrows its analysis from the date of arrest to the date of indictment. For example, in the case that we cited in our brief, United States v. Taylor, the defendant in that case complained of delay from arrest to trial. This court found that the post-indictment delay in that case was attributable solely to the defendant's maneuvering post-indictment filing motions and getting continuances, and then narrowed its focus to the delay between the arrest and the indictment, which in that case was eight months. And the court found that in that case, it was a fairly complex case, and the government's assertion of the need to have extensive preparation to present the case to a grand jury justified the entirety of that eight-month delay. So, yes, Your Honor, it does – most cases do look from the date of arrest to the date of trial, but in all cases, that range gets narrowed through the remaining Barker factors. So what would be too long from your perspective? Well, like Barker says, each case rests on its own facts. So in Barker itself, you had a – A year and a day could be too long. It could be in certain cases. Four years might not be too long. Exactly, Your Honor. It's all – it's very ad-hoc. As Barker says, the speedy trial right is relative. It's contextual. It depends on the circumstances of each and every case. And in this case, the 15-month delay was not too long, Your Honor. As a matter of practice and experience, in the state of New Jersey, is it unusual to have had several charges filed initially and then an indictment which indicts on additional charges at a later date? I wouldn't say it's unusual. It's not common, but it's also not unusual. Things happen after a defendant is arrested when the prosecutors get the files and start pouring over the files where there may be additional charges added in grand jury, and that's entirely proper under the state court rules in New Jersey, and it's a common practice. Not as common as, like, an everyday thing, but it does happen. And it happened in this case, obviously. And getting back to the length of delay here, the 15 months, while that does trigger judicial scrutiny of the remaining Barker factors, we also have to look at how much longer is it than that 12-month standard. And here it's only three months longer than the bare minimum delay that's necessary to trigger that judicial scrutiny. So it does weigh in the petitioner's favor, but very minimally so, as the district court found. And turning, again, to the reasons for the delay, the state courts here found that the reason for the delay was based on the complex nature of this case. The state needed the time to prepare the case for grand jury, and then when they got into the grand jury presentment mode, there were additional charges that they discovered in tax fraud. Mr. Gutter suggests that the district court seems to be creating something of a complexity exception here. What do you say to that? I disagree with that, Your Honor. Actually, what the state courts did here, by factoring in this complexity of the case into their overall Barker analysis, just simply gave credence to what Barker itself said, that delays in complex cases are far more tolerable than delays in cases involving ordinary street crimes. And, in fact, the trial court here, the state court here- As in too long? As in what's too long? I really can't, Your Honor, without- So then, to the Chief's point, I mean, aren't you asking for a de facto complexity exception to the speedy trial? Absolutely not. I'm simply saying that- Then give us some examples of complex cases that would run afoul of the speedy trial. Right. Well, maybe dog it itself. Like I said, it's contextual. It's dependent upon all the circumstances in the case. So if you look at dog it, Your Honors, dog it was an importation of narcotics. It seemed to be a large-scale drug distribution or drug trafficking case. The government obtained an indictment, but they never found the defendant. The defendant was on the land in South America, in Panama, and somehow he fell off the radar. He ended up coming back to the United States. Eight and a half years later, the government finds him just by simply running his name through a credit check. In that case, the defendant, he knew nothing about these charges until he was arrested eight and a half years later. The government's negligence was the reason for that lengthy delay, which was six times longer than the minimum delay needed to trigger an analysis of the speedy trial claim. And in that case, the defendant asserted his speedy trial right as soon as he was arrested and brought in on the charges. Let's look at that assertion issue as it is applied in this case. I think the district court concluded that Mr. Kushner had adequately asserted his right. But what we do know from the procedural history of this case is that he did not move to dismiss the indictment on delay grounds during the 15-month pre-indictment period. What should we make of that, especially given the language of your New Jersey rule, this 325-3? Yes, Your Honor. That rule provides defendants with a procedural mechanism. In cases where there is undue delay in bringing the case to the grand jury. And it says that the trial judge or the judge may then dismiss to esponte or may do so in response to a motion to dismiss, right? To a motion filed by the defendant, yes, Your Honor. That is correct. Now, and this will bring me back to Barker. Barker does say that a defendant has some responsibility to assert his or her right to a speedy trial in a reasonable and timely fashion. And this court has recognized that when a defendant fails to do that in a reasonable and timely fashion, that that factor will weigh against a defendant in the overall analysis. And in fact, in Doggett itself, the government had asserted in that case that the defendant had known about the charges all along and was on the lam because of the charges. And the Supreme Court said, had he actually known that he was under indictment during that six years, his failure to assert his speedy trial claim over that time would weigh heavily against him. And the same happened in Barker. Barker never asserted his speedy trial claim for more than three years. And that was weighed against him in the overall analysis in Barker. It was a factor that the court said indicated that he did not want a speedy trial. Indeed, he was delaying the case in the hopes of obtaining an acquittal based on the co-defendant's trial. And in this case, not only did the petitioner not assert his speedy trial claim during that 15-month pre-indictment delay, he waited from the date of arrest to the day he asserted the claim was over three years. So it wasn't just the 15 months. He waited even longer than that. Well, don't we always circle back to prejudice? I think Judge Hardiman was asking about this earlier. In the context of the local rule, the New Jersey rule, if the court had sua sponte dismissed this case, and then the government two years later brought it again, so the clock's now been reset, at that point you're talking about a prejudice analysis, aren't we? Certainly you could be. I think the dismissal under Rule 325.3 would be with prejudice because that rule is grounded in Barker. Rule 325.2 and 325.3 are premised on Barker, on the constitutional speedy trial claim. That's where the defendant brings his claim for a speedy trial. But that would have dismissed the original charges, not necessarily all the collateral charges the government. Right. Correct. Correct. So the collateral charges could have been brought later. However, the petitioner would have no claim on that because under McDonald and Loud Hawk, a defendant who's not been arrested or indicted does not have a speedy trial claim until that point to the right attaches. And in this case, the prejudice asserted by the defendant, again, the state courts reasonably concluded that these types of prejudices were no different than any other types of prejudice that any criminal defendant suffers in any case. And this court, in particular, has refused to ascribe any significant weight to the types of prejudice without an additional showing of anxiety to the level that it caused psychic injury, like in United States v. Dreyer where the defendant had suffered severe depression and that testimony was unrebutted by the government in that case. So in Dreyer, there was that prejudice that was established. But in Hakeem, the petitioner never asserted that type of prejudice. It was more of a blanket, bald assertion of I've suffered anxiety from the suspicion that I've been living under since my arrest. So in this case, the state asserts that the overall balancing of the factors here do not compel a finding that the petitioner suffered a deprivation of his Sixth Amendment right. Thank you very much. Thank you, Your Honor. Ms. Box. May it please the Court. The appellant has two points on rebuttal. First, the state relies on United States v. Taylor, which is distinguishable from the present case, in that it was decided prior to the Speedy Trial Act being passed, which states that an indictment should be filed within 30 days of an arrest, which is analogous to the present case, and also, more importantly, was decided before the Supreme Court's decision in Doggett v. United States. This eight-month delay that occurred between arrest and indictment in United States v. Taylor would not have fallen within this one-year inquiry set forth in the Court's decision in Doggett v. United States. And second, the state fails to recognize that the state acted contrary to clearly established federal law by not even citing to the Doggett v. United States decision in the appellate court's opinion, thus acted contrary to clearly established federal law and unreasonably applied. Who acted contrary to? The state. The state lawyer? The lawyer for the state? The state in general by failing to indict Mr. Kushner within. But the contrary to or unreasonable application of standard is what the state court does, not the state lawyer, right? So the state court and the prosecutor both have the burden under the habeas corpus and speedy trial analysis and thus had a duty to indict Mr. Kushner in a timely manner but failed to do so and failed to recognize this one-year presumptive prejudice as set forth in Doggett v. United States. Thank you. If the rule is that it is presumptive but that we must look to the facts and context of each situation, surely you would concede that there is no violation when indictment has not occurred within a year when there have been and continue to be investigative steps in a complex matter. Your Honor, the defendant, Mr. Kushner, I see my time is up. May I briefly answer your question? Thank you. I violated the two-minute rule. Mr. Kushner was unaware and unable to create a defense for this arrest or any of the charges that later came in the indictment and thus the state acted contrary to this established one-year presumptive prejudice by not indicting Mr. Kushner in a timely manner. Thus the appellant respectfully requests that this court find in favor and grant habeas corpus relief. Thank you. Thank you very much, Ms. Box. We thank all of counsel for their helpful arguments and, of course, we want to thank once again the litigation clinic from Duquesne for their assistance to the court. We enjoy seeing all of you on a rather regular basis, actually. I think Judge Hardiman mentioned earlier that you usually make an appearance when the court sits here and we hope you'll continue to do so. Thank you very much, counsel. We'll take the matter under advisement. Thank you.